With UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| In re:<br><br>AARON DURALL,<br><br>Debtor. | Case No. 24-14573-SMG<br><br>Chapter 7 |
| UNITED HEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY; and UNITEDHEALTHCARE OF GEORGIA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AARON DURALL,<br><br>Defendant. | Adv. Pro. No. 24-_____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND TO
DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(A)(6)**

UnitedHealthcare Insurance Company, UnitedHealthcare Services, Inc., and UnitedHealthcare of Georgia, Inc. (collectively, "UHC" or "United") hereby file this complaint for declaratory judgment and to determine the non-dischargeability under 11 U.S.C. § 523(a)(6) of UHC's claim, Claims Reg. No. 5-1.

### INTRODUCTION

1. On April 14, 2023, the U.S. District Court for the Northern District of Georgia entered judgment for UHC against DL Investment Holdings, LLC ("DL Investment") for $251,196.80, plus interest pursuant to 28 U.S.C. § 1961 (the

1

"Judgment"). There, Chief District Judge Timothy Batten found that DL Investment had "obviously breached" a 2018 Stand Down Agreement ("SDA") executed between UHC, DL Investment, Debtor Aaron Durall ("Mr. Durall" or "Debtor"), and others by filing an arbitration against UHC on March 11, 2022. The Judgment reflects the attorneys' fees UHC incurred in an arbitration brought by Debtor Aaron Durall (through DL Investment) in willful and malicious violation of the SDA.

2. Mr. Durall is personally liable for the Judgment because he is DL Investment's alter ego. Mr. Durall was DL Investment's sole owner and manager. And as is now clear from Mr. Durall's testimony at the 341 Creditors Meeting and documents produced by DL Investment in another litigation, DL Investment was always undercapitalized and has been without assets or operations since 2018. In fact, DL Investment was dissolved on January 14, 2021. So, on March 11, 2022, when Mr. Durall filed the arbitration against UHC through DL Investment, he did so knowing that DL Investment (i) was barred by the SDA from litigating against UHC; (ii) had been defunct for several years; (iii) had even been formally dissolved; and (iv) had no assets. (*See* Claims Reg. 5-1.) The Court should enter judgment declaring that DL Investment's limited liability form should be disregarded such that Mr. Durall is liable for DL Investment's debt to UHC, as set forth in UHC's Proof of Claim.

3. Mr. Durall incurred this debt through willful and malicious conduct. Mr. Durall intentionally left DL Investment undercapitalized, and then willfully and maliciously breached the SDA by filing a prohibited arbitration through the undercapitalized entity, using DL Investment's corporate form to insulate himself from

personal liability for breaching the SDA and against any counterclaims UHC might have raised were an arbitration to proceed. Mr. Durall's conduct was deliberate, without just cause, and done knowing it would necessarily injure UHC by incurring legal fees that DL Investment would never be able to pay for the consequences of the intentional breach because of its lack of capitalization.[1] The Court should enter judgment that the debt owed to UHC, as set forth in UHC's Proof of Claim, is not dischargeable under 11 U.S.C. § 523(a)(6).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b), 11 U.S.C. § 523(a), and Fed. R. Bankr. P. 7001.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because this is an action to determine the dischargeability of a debt.

6. Venue is proper under 28 U.S.C. § 1409(a) because this is a proceeding arising under Title 11 and arises in and is related to a case under Title 11 that is pending in this district.

## PARTIES

7. United Healthcare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota.

---

[1] The types of counterclaims that UHC might have raised, were it to have proceeded to substantively arbitrate over the submission of lab claims, are akin to those that Cigna raised, which lead to Cigna's $20,667,019 award—the same award which Mr. Durall identified as a debt in his petition in this bankruptcy action. (Doc. 1, at 8.)

3

8. UnitedHealthcare Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

9. UnitedHealthcare of Georgia, Inc. is a corporation organized under the laws of the State of Georgia, with its principal place of business in Georgia.

10. United Healthcare Services, Inc., UnitedHealthcare Insurance Company, Inc., and UnitedHealthcare of Georgia, Inc. are referred to herein as "United" or "UHC."

11. Debtor Aaron Durall is an individual and resident of the State of Florida, residing at 7822 Marvanna Lane, Parkland, FL 33076.

## BACKGROUND

12. DL Investment was a limited liability company incorporated under the laws of the State of Florida. Mr. Durall acknowledged at his Section 341 Creditors Meeting and in other litigations that he is the sole owner and manager of DL Investment. (Cred. Mt'g Tr. 41 (attached as Ex. A).) In 2016, Mr. Durall used DL Investment as a holding company to purchase Chestatee Regional Hospital ("Chestatee"), a small, rural 49-bed facility in Lumpkin County, Georgia.

13. On June 17, 2020, DOJ Main Justice prosecutors indicted Mr. Durall and several co-conspirators for healthcare fraud. *See United States v. Perez, et al.*, No. 20-cr-00086-TJC (M.D. Fla.) ("Criminal Case"), Superseding Indictment (Doc. 180)

¶¶ 4, 37(g), 37(k).[2] According to the government, Mr. Durall and his cohorts orchestrated a $1.4 billion fraudulent healthcare scheme by purchasing rural hospitals, including Chestatee, to use as pass-through billing entities to claim insurance reimbursement for lab tests those hospitals didn't perform.

14. But back on August 8, 2018, before Mr. Durall was indicted, and despite the deceitful lab claims he had billed to UHC through Chestatee, Mr. Durall caused DL Investment to file an arbitration against UHC in which he asserted that UHC had failed to properly pay those fraudulent claims ("Arbitration #1"). In other words, Mr. Durall—quite boldly—filed Arbitration #1 seeking reimbursement for unpaid claims associated with the pass-through billing fraud that he would be indicted for shortly thereafter.

15. Arbitration #1 was short-lived. UHC announced its intention to file fraud counterclaims for tens of millions of dollars. And with criminal investigation circling Mr. Durall, UHC and Durall negotiated a contract to suspend all arbitration or litigation between them. To that end, on December 14, 2018, UHC and Mr. Durall (and seven other parties, including DL Investment) executed the SDA.

---

[2] Mr. Durall was indicted and then acquitted of federal criminal charges of conspiracy, healthcare fraud, conspiracy to commit money laundering, and money laundering. In the criminal case's first trial, two of Mr. Durall's alleged co-conspirators were convicted, but the jury hung as to Mr. Durall. In the second trial, Mr. Durall's co-defendants testified about his involvement in the criminal conduct. The jury reported that it was deadlocked on a verdict. Only after the judge issued an "*Allen* charge" did the jury return a not-guilty verdict as to Mr. Durall. Five of Mr. Durall's criminal co-defendants were convicted or pleaded guilty, and one fled the country. Criminal Case at Docs. 143–51, 619, 768–75, 977–80, 1005, 1007.

16. The SDA is a cease-fire agreement, but it is also an option contract that provides UHC with the exclusive right to re-initiate litigation over lab claims between the parties to it. The SDA is quite clear that "[t]he Durall Parties shall not file any type of litigation against United concerning the submission of laboratory services, unless United initiates litigation (or provides notice of its intent to initiate litigation) against a Durall Party."[3] (SDA ¶ 2.A (attached as Ex. B).) The SDA also provides that if Mr. Durall or DL Investment were to file litigation in breach of the SDA, that such an action must be dismissed, and UHC would be automatically entitled to costs and attorneys' fees against them. (SDA ¶ 3.A.) Since signing the SDA, UHC has never opted to initiate litigation against a Durall Party concerning the submission of laboratory services or given notice of an intent to do so.

17. Shortly after the SDA was signed, Mr. Durall depleted DL Investment of all its assets. (Cred. Mt'g Tr. 24, 42 (341 Creditors Meeting testimony by Mr. Durall that DL Investment has been inoperative since 2018 or 2019 and that DL Investment has not produced financial statements since 2018).) And on January 14, 2021, Mr. Durall filed Articles of Dissolution on behalf of DL Investment. Since then, DL Investment has been defunct with no operations, capital, or other assets.

18. Several years passed. But incredibly, on March 11, 2022—despite DL Investment not being an operating business, having no assets, and having been formally dissolved—Mr. Durall intentionally brought another arbitration ("Arbitration

---

[3] The SDA was entered into by UHC and a group defined as the "Durall Parties," which includes Aaron Durall, DL Investment, and other entities and persons associated with Mr. Durall.

6

#2") against UHC in the name of DL Investment in obvious breach of the SDA. Upon information and belief, Mr. Durall filed Arbitration #2 through DL Investment because DL Investment could, on paper, help him remain (i) insulated from ever having to pay the mandatory attorneys' fees provision the SDA contains as a penalty for its breach; and (ii) insulated from any judgment that UHC might obtain on the merits of any asserted fraud counterclaims were Arbitration #2 to proceed.

19. On March 23, 2022, after filing Arbitration #2 in the name of DL Investment. Mr. Durall filed a revocation of its dissolution on behalf of DL Investment. (Sec'y of State Filing (attached as Ex. D).) This appears to mean that at the time Arbitration #2 was filed, Mr. Durall had forgotten that DL Investment was no longer a going concern.

20. Having been served with Arbitration #2, UHC had no desire to arbitrate against Mr. Durall (or DL Investment). After objecting to Arbitration #2 with the American Arbitration Association, on January 17, 2023, UHC filed an action in the United States District Court for the Northern District of Georgia against DL Investment for breach of the SDA and to enjoin Arbitration #2. *See generally United Healthcare Services, Inc., et al. v. DL Investment Holdings, LLC*, No. 1:23-cv-00228-TCB (N.D. Ga.) ("NDGA Action"), Doc. 16. In that case, the court found that DL Investment had "obviously breached the SDA by filing the second arbitration" and enjoined Arbitration #2. (*Id.* at 18.) A couple months later, the court entered the Judgment against DL Investment, reflecting attorneys' fees and costs UHC had incurred in objecting to Arbitration #2 and in pursuing the NDGA Action. (*See* Judgment

7

(attached as Ex. E).) As of the date of Mr. Durall's bankruptcy filing, that Judgment reflects a debt of $263,829.42. To date, the Judgment has not been paid.

21. UHC served post-judgment interrogatories and requests for production on DL Investment. Mr. Durall responded to those discovery requests on behalf of DL Investment. (Resp. to Post J. Disc. Interrog. 1 (attached as Ex. F).) In those responses, Mr. Durall could not identify any current or former employees of DL Investment, any bank accounts or funds held or once held by DL Investment, or any transaction history of DL Investment—in short, Mr. Durall (a/k/a DL Investment) claimed to have no financial information to provide.

22. While acknowledging that DL Investment once "had account(s) at BB&T Bank (now Truist)" (*see* Resp. to Post J. Interrog. 5), Mr. Durall explained that DL Investment could not respond to most of the financial-oriented discovery requests because Mr. Durall had "lost access to the account(s) as a part of the Criminal Case." (Resps. to Post J. Interrogs. 5, 9, 10, 15; Resps. to Post J. RPDs 4, 5.) Mr. Durall also stated that DL Investment had never obtained independent financing and had never obtained a loan, line of credit, or cash advance in its own name. (Resp. to Post J. Interrog. 6.) Mr. Durall further admitted that DL Investment had no communications with anyone, including DL Investment's attorneys, concerning the settlement of the NDGA Action, the resulting consent judgment, and DL Investment's obligation to pay UHC. (Resp. to Post J. RPD 6.)

23. DL Investment's post-judgment discovery responses are strikingly like Mr. Durall's 341 Creditors Meeting testimony about his personal financial affairs.

8

For example, Mr. Durall testified at the Section 341 Creditors Meeting that he is unable to provide his own banking and transaction information because "BB&T ostensibly kicked [him] out of the bank once . . . a lawsuit was filed against [him] for healthcare fraud." (Cred. Mt'g Tr. 9.) There is no meaningful distinction between Mr. Durall and DL Investment.

24. On or around August 12, 2024, DL Investment provided UHC with transaction records associated with a single bank account. Those records reflect DL Investment's undercapitalization throughout its lifespan and Mr. Durall's abuse of its corporate form. (*See* Bank Statements at DL7390–DL7348 (attached as Ex. H).) Indeed, since the company's inception, and despite earning monthly income in the hundreds of thousands of dollars (at least as reflected in this account), every month, Mr. Durall transferred almost the entire capital balance of DL Investment to himself:

| Statement Date | Credits | Debits | Begin Balance | End Balance |
|---|---|---|---|---|
| 08/31/2016 | $2,000.00 | $1,000.00 | $0.00 | $1,000.00 |
| 09/30/2016 | $238,814.98 | $237,063.97 | $1,000.00 | $2,751.01 |
| 10/31/2016 | $256,745.85 | $249,450.00 | $2,751.01 | $10,046.86 |
| 11/30/2016 | $145,494.15 | $145,172.60 | $10,046.86 | $10,368.41 |
| 12/30/2016 | $111,160.44 | $84,087.00 | $10,368.41 | $37,441.85 |
| 01/31/2017 | $97,863.52 | $121,508.55 | $37,441.85 | $13,796.82 |
| 02/28/2017 | $50,383.51 | $53,159.00 | $13,796.82 | $11,021.03 |
| 03/31/2017 | $104,836.27 | $109,106.50 | $11,021.03 | $6,750.80 |
| 04/28/2017 | $152,259.90 | $145,145.50 | $6,750.80 | $13,865.20 |
| 05/31/2017 | $107,343.69 | $120,196.00 | $13,865.20 | $1,012.89 |
| 06/30/2017 | $69,827.41 | $63,077.50 | $1,012.89 | $7,762.80 |
| 07/31/2017 | $52,534.15 | $52,165.00 | $7,762.80 | $8,131.93 |
| 08/31/2017 | $62,937.73 | $70,117.68 | $8,131.93 | $951.98 |

Most of the debits in the foregoing chart were made in large transfers to a single checking account, ostensibly belonging to Mr. Durall. Although all its transaction

9

history was requested, DL Investment failed to provide any further bank statements for any of its subsequent activity or pertaining to any other accounts, to the extent that such records or accounts exist.

25. DL Investment did, however, produce tax returns for the years 2016–2018. Those tax returns reflect a **loss** of $2,153,275 in 2016, a **loss** of $7,315,582 in 2017, and a **loss** of $12,994,313 in 2018, the last year of its operations according to Mr. Durall.[4]

26. Despite having no assets or operations, on March 11, 2022—several years after ceasing operations of DL Investment and despite DL Investment not being an operating business, having no assets, and having been formally dissolved—Mr. Durall intentionally brought Arbitration #2 against UHC in the name of DL Investment in obvious breach of the SDA. Mr. Durall filed Arbitration #2 willfully and knowing it would cause harm to UHC in the form of attorneys' fees and costs incurred in having to litigate the frivolous arbitration.

27. On June 12, 2024, Mr. Durall again filed Articles of Dissolution of DL Investment, while the discovery mentioned above was pending, ostensibly to relieve that entity of responding to UHC's post-judgment discovery requests. (Sec'y of State

---

[4] Based on the Government's allegation in the Criminal Case that Mr. Durall obtained at least $184,407,671.87 in fraudulent proceeds through DL Investment during the period of his alleged fraudulent billings to UHC and other health insurance payors, the fact that DL Investment's tax returns reflect a loss for all of the years it owned Chestatee Regional Hospital is highly suspect. (*See* Superseding Indictment in Criminal Case at p.31, Doc. 180.)

Filing (attached as Ex. G).) Mr. Durall appears to revive DL Investment when it is convenient for him but to dissolve it when it is inconvenient for him.

28. On June 27, 2024, UHC filed a proof of claim against Mr. Durall for $263,829.42 in this proceeding, which reflects the judgment entered by the Northern District of Georgia as a penalty of attorneys' fees for the improper arbitration brought by Mr. Durall through DL Investment. (*See* Claims Reg. 5-1.) Mr. Durall has not objected to that claim.

### COUNT ONE – DECLARATORY JUDGMENT
### TO DISREGARD THE CORPORATE FORM OF DL INVESTMENT

29. UHC incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

30. The limited liability company form of DL Investment should be disregarded such that Mr. Durall is liable for its debts. Mr. Durall is the alter ego of DL Investment and used DL Investment for the fraudulent and/or improper purpose of filing suit against UHC in breach of the SDA, hoping to avoid personal liability for the consequences of his actions.[5] After UHC obtained the Judgment, he then dissolved DL Investment to avoid having to answer post-judgment discovery on behalf of the entity. The Court should pierce the corporate veil of DL Investment and find that Mr. Durall is liable to UHC for the Judgment.

---

[5] While it is abundantly clear herein, UHC is only submitting a claim for the Judgment and no other liabilities in this bankruptcy proceeding, including with regard to the submission of laboratory claims.

11

31. Under Florida law, to pierce the corporate veil and hold a shareholder liable for his company's debts, a claimant must establish that: "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation['s] independent existence, was in fact non-existent and the . . . shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468–69 (Bankr. M.D. Fla.) (citing *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984)). Each of these three elements are easily satisfied here.

32. As to the first element, Mr. Durall dominated and controlled DL Investment. Mr. Durall is DL Investment's sole owner and manager. DL Investment has never been independently capitalized. And even when it did receive credits, Mr. Durall depleted almost all its assets to himself personally every month. DL Investment has had no operations since 2018. And Mr. Durall's claimed lack of access to DL Investment's financial records and bank accounts, as he represented in the NDGA Action, mirrors his claimed lack of access to his personal accounts in this case. There is no line separating Mr. Durall from DL Investment.

33. Moreover, in executing the Judgment, which entered on consent, DL Investment admitted it had no communications with its counsel or others—which means that DL Investment's counsel did not interact with DL Investment as a client. Rather, its counsel only interacted with Mr. Durall. Mr. Durall also personally signed DL Investment's notices of dissolution and revocation of dissolution, as it suited him,

for the purpose of bringing sham litigation in violation of the SDA. DL Investment is a "mere instrumentality" of Mr. Durall. *See, e.g.*, *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1288 (S.D. Fla. 2021).

34. Second, Mr. Durall used DL Investment for an improper purpose. Quite aside from causing DL Investment to submit fraudulent claims for lab services to UHC from 2016–2018, Mr. Durall executed the SDA to avoid having to litigate UHC's fraud counterclaims in the Arbitration #1. He then depleted DL Investment of all its assets, dissolved it, and, in violation of the SDA, caused DL Investment to file Arbitration #2—knowing DL Investment was dissolved, uncapitalized, and would have no funds to pay a judgment on any successful counterclaims by UHC or the attorneys' fees and costs mandated by the SDA as a penalty for a breaching party.

35. Finally, Mr. Durall's improper use of a wholly uncapitalized and unfunded DL Investment to file an arbitration in violation of the SDA caused UHC harm in the form of costs and attorneys' fees UHC incurred in Arbitration #2 (as liquidated in the Judgment) without the ability to recover from DL Investment.

36. Mr. Durall hasn't disputed that, for purposes of UHC's claim, that the limited liability company form of DL Investment should be disregarded. Mr. Durall has, however, disputed that the limited liability company form of DL Investment should be disregarded in the context of his objection to the claim filed by Cigna Healthcare of Georgia, Inc. (Objection, Doc. 133.)

37. In accordance with 28 U.S.C. § 2201(a), an actual controversy exists between UHC and Mr. Durall.

13

38. UHC seeks, and is entitled to, a declaration that DL Investment's limited liability company form should be disregarded, and Mr. Durall should be liable for DL Investment's debt to UHC as set forth in UHC's Proof of Claim.

**COUNT TWO – NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(6)**

39. UHC incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

40. The debt incurred by Mr. Durall's filing of Arbitration #2 in breach of the SDA was a willful and malicious injury by Mr. Durall to United.

41. In short, to pause all litigation between them, the SDA provides that "[t]he Durall Parties shall not file any type of litigation against United concerning the submission of laboratory services, unless United initiates litigation (or provides notice of its intent to initiate litigation) against a Durall Party." (SDA ¶ 2.A.) The SDA further provides that if any Durall Party, including Mr. Durall or DL Investment, were to file an arbitration (or other type of litigation) in breach of the SDA, that such an action must be dismissed, and UHC would be automatically entitled to costs and attorneys' fees. (SDA ¶ 3.A.) Mr. Durall, who knew that UHC had not initiated litigation against him as prescribed by the SDA, therefore knew that he was not permitted to file Arbitration #2 and knew or should have known that doing so would only cause unnecessary harm to UHC.

42. But in willful and malicious violation of the SDA, on March 11, 2022, Durall intentionally and deliberately caused Arbitration #2 to be filed against UHC concerning the submission of laboratory services. Upon information and belief, Mr.

14

Durall knew, or was at least substantially certain, that causing the commencement of Arbitration #2 would cause harm to UHC, including but not limited to incurring legal fees and costs to have it dismissed in accordance with the SDA. Upon information and belief, Mr. Durall filed Arbitration #2 for some wrongful purpose collateral to a pending criminal case in which Mr. Durall had been indicted and was awaiting trial for healthcare fraud in the United States District Court for the Middle District of Florida. *See generally United States v. Perez, et al.*, No. 3:20-cr-00086-TJC-JBT (M.D. Fla.) ("Criminal Case"). Mr. Durall had no just cause to cause the commencement of Arbitration # 2 in express violation of the SDA. Mr. Durall further compounded his wrongful conduct by using his defunct entity, which he purposely and meticulously kept judgment proof, to commence Arbitration #2 to frustrate UHC's rights to recover its attorney's fees and costs for such a gross violation of the SDA.

43. The Northern District of Georgia found that Mr. Durall "obviously breached the SDA by filing" Arbitration #2. *See United Healthcare Services, Inc., et al. v. DL Investment Holdings, LLC*, No. 1:23-cv-00228-TCB (N.D. Ga.), Doc. 16, at 18. That court subsequently entered the Judgment, which is the basis for UHC's claim against Mr. Durall in this action.

## PRAYER FOR RELIEF

WHEREFORE, UHC respectfully requests the following relief against Debtor Aaron Durall:

A. Enter judgment declaring that DL Investment's limited liability form should be disregarded such that Mr. Durall is liable for DL Investment's debt to UHC, as set forth in UHC's Proof of Claim.

B. Enter judgment that the debt owed to UHC, as set forth in UHC's Proof of Claim, is not dischargeable under 11 U.S.C. § 523(a)(6);

C. Award costs and interests as allowed by law; and

D. Grant such other relief at law or in equity as the Court deems just.

Respectfully submitted October 15, 2024.

> BY: /s/ *Alison P. Baker*
> Alison P. Baker, Esq.
> SHIPMAN & GOODWIN LLP
> 12902 Mallard Creek Drive
> Palm Beach Gardens, FL 33418
>
> 300 Atlantic Street, 3rd Floor
> Stamford, Connecticut 06901
> Main Telephone: (203) 324-8100
> Direct Dial Tel. (203) 324-8137
> Facsimile: (203) 324-8199
> Email: abaker@goodwin.com
> Florida Bar No. 114041
>
> Eric S. Goldstein, Esq. (admitted *pro hac vice*)
> SHIPMAN & GOODWIN LLP
> One Constitution Plaza
> Hartford, CT 06103
> Main Telephone: (860) 251-5000
> Direct Dial Tel: (860) 251-5059
> Facsimile: (860) 251-5218

Email: egoldstein@goodwin.com
Connecticut Bar No. 424899

- and -

Scott P. Kerew (admitted *pro hac vice*)
SINTON SCOTT MINOCK & KEREW
3438 Peachtree Road, Suite 925
Atlanta, Georgia 30326
Main Telephone: 470.323.0003
Email: skerew@ssmklaw.com
Georgia Bar No. 416629

*Counsel for UnitedHealthcare Insurance Company, United HealthCare Services, Inc., and UnitedHealthcare of Georgia, Inc.*